IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| DEFENDERS OF WILDLIFE and SOUTH CAROLINA COASTAL CONSERVATION LEAGUE,<br><br>            Plaintiffs,<br><br>   v.<br><br>ROBERT H. BOYLES, JR., in his official capacity as Director of the South Carolina Department of Natural Resources, and CHARLES RIVER LABORATORIES, INTERNATIONAL, INC.,<br><br>            Defendants. | Civ. No. 2:22-CV-112-RMG |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT ROBERT H. BOYLES, JR.'S MOTION TO CONFIRM CONFIDENTIAL DESIGNATION**

Plaintiffs Defenders of Wildlife and South Carolina Coastal Conservation League oppose the motion of Defendant Robert H. Boyles Jr. (hereinafter "SCDNR") to confirm the confidentiality of certain discovery materials, ECF No. 69, and respectfully request that the Court rule the challenged designations improper under paragraphs 4 and 9 of its Confidentiality Order, ECF No. 57.[1]

---

[1] Plaintiffs challenge the confidentiality of SCDNR's First Supplemental Answers to Plaintiffs' First Set of Interrogatories, submitted to the Court for *in camera* review as IC Exhibit H to ECF No. 67.

**BACKGROUND**

**I.      Factual Background.**

In over three months of discovery, SCDNR has produced three documents totaling 153 pages, designating every single page "CONFIDENTIAL," *see* IC Ex. A; IC Ex. B; IC Ex. C,[2] including substantially the same materials it has filed on the public docket.[3] The materials at issue here are aggregated, anonymized fishery data, including annual horseshoe crab harvesting and containment pond totals, and crab mortalities in containment ponds broken down by sex of crab (including female mortalities in 2022, when no females were supposed to be held in ponds, ECF No. 42-1 at 4). *See* ECF No. 67—IC Ex. H. These materials are representative of the blanket confidentiality assertions by SCDNR and Defendant Charles River Laboratories International, Inc. ("Charles River"), *see also* ECF No. 67 at 2–3; ECF No. 71 at 7 n.2.

The challenged data concern SCDNR's management of the horseshoe crab fishery—a natural resource held by the State in trust for the public, *see* S.C. Code Ann. § 50-1-10—and the impacts of commercial activities on this public resource. Under the South Carolina Constitution, the State's "conservation of its natural resources [is a] matter[] of public concern." Art. XII § 1.

SCDNR criticizes Plaintiffs for challenging its designations, suggesting that public interest in these materials is an "improper" purpose for a challenge. *See* ECF No. 69 at 4. The

---

[2] As a result of these designations, Plaintiffs have submitted these materials for the Court's *in camera* review pursuant to paragraph 7 of the Confidentiality Order. Pursuant to the same paragraph, Plaintiffs have consulted with SCDNR, who does not object to submitting these materials *in camera*. Plaintiffs have cited documents designated confidential with the prefix "IC," for *in camera*. Citations to page numbers of exhibits supporting this brief, both public and *in camera*, exclude the cover page of such exhibits, with page 1 beginning after the cover page.

[3] *Compare* ECF No. 42-1 at 1–6 (horseshoe crab permits with no identifying information), *with* IC Ex. B at 1–4, *and* IC Ex. C at 1–52 (horseshoe crab permits with identifying information removed).

agency fails to survey this Court's decisions, which require considering "the importance of disclosure to the public." *Rech v. Wal-Mart Stores East, L.P.*, 8:19-cv-2514-BHH, 2020 WL 3396723, at *2 (D.S.C. June 19, 2020) (citation omitted); *Duncan v. Costco Wholesale Corp.*, No. 4:20-cv-03605-SAL, 2021 WL 5827272, at *2 (D.S.C. Apr. 12, 2021). The data at issue are important to the public's understanding of the state's management of unique fisheries' resources and the threatened red knots that depend on these resources. Especially in a case like this bearing on matters of public interest, "[c]ourts must be vigilant to assure Confidentiality Orders are not overused and are only used for legitimate purposes." *In re Valsartan N-Nitrosodimethylamine (NDMA), Losartan, & Irbesartan Prods. Liab. Litigation*, 512 F. Supp. 3d 546, 550–51 (D.N.J. 2021).

"[T]he over designation of confidential documents is not harmless" and "causes administrative headaches since parties have to be concerned about distribution limits as well as redactions and sealing requests." *Id.* at 548 n.1. These concerns are not abstract—even on Defendants' limited document production thus far, *see supra* at 2; ECF No. 67 at 6–8, blanket designations have hampered Plaintiffs' discussion of critical materials in their publicly-filed motion to compel, requiring time-intensive consultation with Defendants on the production of "confidential" materials, which delayed Plaintiffs' filing, *see* Ex. A at 1, 3 (Charles River's 4-day delay to say "[w]e do not object to [Plaintiffs'] proposed approach regarding *in camera* review of confidential documents"), and the preparation and delivery of numerous hard copies of exhibits for *in camera* review. ECF No. 67 at 2–3 & nn. 1–3. These "unnecessary logistical restraints" will only "multipl[y]" as SCDNR begins to produce its voluminous responsive documents subject to similar "improper designation[s]." *See In re ULLICO Inc. Litigation*, 237 F.R.D. 314, 318 (D.D.C. 2006). Among other things, it may require Plaintiffs to submit extensive documents

3

for the Court's in camera review (as has already been the case for Plaintiffs' motion to compel and with the present brief) and file motion(s) to seal at summary judgment or earlier, *see* Local Civ. R. 5.03, for documents Plaintiffs do not believe to be confidential.

Rather than litigating under a heavy blanket of secrecy, and to spare the Parties' and the Court's resources over the long run, Plaintiffs exercised their right under Paragraph 9 of the Confidentiality Order to challenge certain fishery data representative of Defendants' mis-designations and centrally relevant to this public-interest Endangered Species Act case. *See* ECF No. 67—IC Ex. H.

## II.  **Legal Background.**

The South Carolina Marine Resources Act provides that:

> A person or entity licensed or permitted by the department engaged in the take, distribution, or propagation of any saltwater fishery product for a commercial or scientific purpose must keep accurate records and may be required to provide accurate information and reports to the department on forms and by methods required by the department for the administration and enforcement of saltwater fishery laws and for fisheries management purposes. . . . Any information which directly or indirectly discloses the *identity* of a licensee or permittee or *income amounts* or *trade secrets* or *other specialized methodologie*s for growing or taking or marketing saltwater fisheries products is not public information. . . .
>
> *Noncommercial* information provided *voluntarily* to the department in support of a *resource or management activity* is likewise confidential.

S.C. Code Ann. § 50-5-380 (emphasis added). State law only protects the "identity" of licenses and permittees, "income amounts," "trade secrets," and certain "specialized methodologies" and "[n]oncommercial information." State law does not afford a blanket shield over all information about saltwater fisheries or commercial horseshoe crab harvesting, and does not protect <u>all</u> information reported by permittees to SCDNR. For example, state law does not make confidential anonymized fisheries data such as the total number of horseshoe crabs harvested in the State and/or held in containment ponds, mortalities of crabs held in ponds and/or subjected to

4

biomedical bleeding, or the sex breakdown of crabs held in ponds. Such fishery data does not plausibly disclose the identity of any permittee, income amounts, trade secrets, or specialized methodologies.

The Marine Resources Act does not define "trade secret," but another State statute does, in relevant part, as:

> information including, but not limited to, a formula, pattern, compilation, program, device, method, technique, product, system, or process, design, prototype, procedure, or code that . . . derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain economic value from its disclosure or use . . . .

S.C. Code Ann. § 39-8-20(5).

As discussed below, only the Marine Resources Act and South Carolina's definition of trade secrets are at issue in this motion.

## LEGAL STANDARDS

Under the Court's Confidentiality Order, "[a]ny CONFIDENTIAL designation is subject to challenge . . . . at any time[.]" ECF No. 57 at ¶ 9. "The burden of proving the necessity of a Confidential designation remains with" SCDNR, "the party asserting confidentiality." *See id.* at ¶ 9(a). Although SCDNR appears to suggest that the Court's Order "resolve[s]" the confidentiality of the challenged information, *see* ECF No. 69 at 3–4, 10, the Order is expressly to the contrary:

> 12. **No Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any specific document or item of information designated as CONFIDENTIAL by counsel is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as a document-specific ruling shall have been made.

ECF No. 57 at ¶ 12; *accord Edwards Vacuum v. Hoffman Instr. Supply, Inc.*, 3:20-cv-1681, 2021 WL 186932, at *2 (D. Ore. Jan. 19, 2021) ("[T]he fact that the parties may

5

have stipulated to a protective order is not itself a basis for . . . restricting access to any specific discovery material.").[4]

To obtain a document-specific ruling, SCDNR must prove that the challenged materials are "protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information." ECF No. 57 at ¶ 4. The burden of proof is good cause, *Bowen v. Adidas Am., Inc.*, No. 3:18-cv-3118-JFA, 2021 WL 7367117, at *1 (D.S.C. June 7, 2021), a "high" standard, *United Prop. & Casualty Ins. v. Couture*, 2:19-cv-01856-DCN, 2020 WL 2319086, at *2 (D.S.C. May 11, 2020) (citation and quotations omitted). "In deciding whether good cause exists, the district court must balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to the public." *Rech*, 2020 WL 3396723, at *2 (citation omitted).

The party asserting confidentiality must show that "(1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm." *Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 140 (D. Md. 2011) (citations and quotations omitted). The movant "must make specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory

---

[4] Plaintiffs supported entry of paragraph 2 of the Confidentiality Order, which allows SCDNR to designate "information received from permittees as 'CONFIDENTIAL' pursuant to the remaining terms of this order," in order "to facilitate discovery and ensure that document specific rulings, if any, are sought by the parties after disclosure but before any documents designated as confidential are filed in the public record." ECF No. 56 at 1 (citation and quotations omitted). Plaintiffs did not concede, and the Court did not hold, that such information is, in fact, confidential or immune from challenge. *See id.* at 4 ("The proposed modification [in paragraph 2], by its express terms, would not make any such information public until the parties obtain [] document-specific rulings").

allegations of potential harm." *Id.* at 140 (citations and quotations omitted). "With regards to the claim of confidential business information, courts have found that the 'good cause' standard demands that the [movant] prove that disclosure will result in a 'clearly defined and very serious injury to [] business.'" *Id.* (internal citations omitted).

## ARGUMENT

I.  **The Challenged Materials are Not Confidential.**

As explained above, the challenged materials are aggregated, anonymized data concerning SCDNR's management of the horseshoe crab fishery and the impacts of commercial activity on that public resource. These are matters of "public concern" under the South Carolina Constitution, Art. XII § 1. The rules should be no different in a fishery used by a powerful company.

The data at issue are not confidential under either South Carolina law or any claimed federal authority cited by SCDNR.

A.  **The Data at Issue are Not Confidential under the Marine Resources Act or South Carolina Trade Secrets Law.**

In its motion and through many months of discussion, *see* ECF No. 69-1 at 1, SCDNR has raised a single legal basis for the confidentiality of the disputed materials—that they are "trade secrets" under S.C. Code Ann. § 50-5-380(A). Not once in these discussions or in its motion or supporting exhibits has SCDNR or any permittee articulated *why* the aggregated, anonymized fishery data at issue is a "trade secret"—that is, "a formula, pattern, compilation, program, device, method, technique, product, system, or process, design, prototype, procedure or code," or information that "derives independent economic value, actual or potential," from not being generally known or

ascertainable. *See* S.C. Code Ann. § 39-8-20(5) (definition of "trade secret" in different state statute).

SCDNR has offered only one explanation for why these materials are trade secrets: *because counsel for the permitees say so*. ECF. No. 69 at 6 ("The permit holders have indicated that the information is confidential and should not be made public. Given these requests, DNR has honored its statutory obligations and the directives of the Court's Confidentiality Order by providing the requested information with a Confidential designation."). Plaintiffs have repeatedly asked SCDNR to explain, beyond the permitees' mere say-so, why the challenged materials meet the definition of "trade secrets." *See, e.g.*, Ex. B. SCDNR has refused, as has Charles River, with the agency insisting on total deference to the conclusory assertions of trade secret by permittees. *See* ECF No. 69 at 6; ECF No. 69-3 at 2, 4. SCDNR has "offered no *evidence* indicating that [the challenged material] was a trade secret, and instead relied upon insufficient conclusory assertions . . . ." *Oh. & Vicinity Reg'l Council of Carpenters v. Archer Interiors, Inc.*, No. 5:08-cv-1996, 2009 WL 10740990, at *5 (N.D. Oh. July 30, 2009) (emphasis added); *accord CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-cv-0033-LRR, 2017 WL 2311670, at *3 (N.D. Iowa May 26, 2017) (noting that "generalized and conclusory assertions" of trade secret cannot withstand a confidentiality challenge).

SCDNR notes that a permittee's "best fishing spots" may be trade secrets protected under § 50-5-380. *See* ECF No. 69 at 9. But the Court will find no such information in the challenged document, which only contains aggregated, anonymized fishery data that is not confidential under any provision of state or federal law.

SCDNR hardly attempts to show that the challenged data fall under any category in § 50-5-380 beyond trade secrets. The data at issue does not disclose the "identity" of any licensee or permittee. Indeed, SCDNR concedes that "[t]he identities of the permittees are not at issue at this time." *Id.* at 5 n.3. To the extent the challenged data are "broken out by individual permit holders," *id.* at 5, *anonymized* labels are used—e.g., source "A," ECF No. 67—IC Ex. H at 4. To be clear, Plaintiffs do not challenge any identifying information redacted by SCDNR under paragraph 2 of the Confidentiality Order.[5]

Moreover, the universe of horseshoe crab permittees is not so "small." *Compare* ECF No. 69 at 6 (SCDNR's claim), *with* IC Ex. B at 1–4, *and* IC Ex. C at 1–52 (over two dozen horseshoe crab permits).[6] SCDNR makes no attempt to explain how "big" or "small" a fishery must be to win a total veil of secrecy, how the challenged data could be traced to any one of the over two dozen permittees in this fishery, or why—even if it

---

[5] SCDNR further claims that "[g]iven the small universe of players in this fishery, it is not difficult *to trace* even aggregated data to a single permittee or pair of permittees." ECF No. 69 at 6 (emphasis added). But if SCDNR does not *identify* any permittee or expose trade secrets, this would not run afoul of § 50-5-380—which, it bears repeating, does *not* shield <u>all</u> information reported by a permittee. Under SCDNR's approach, companies like Charles River could identify *themselves* publicly as horseshoe crab processors (and thus, as SCDNR permitees), and by virtue of their self-identification, claim secrecy over any information they report to SCDNR even if disclosure is anonymized like the materials at issue here. Fortunately, the statute does not allow for this gamesmanship, shielding permittee "identity"—not "any information that could be traced to a publicly-identifiable permittee."

[6] SCDNR focuses on one category of permits, "possession permit[s]," claiming there are "only two" holders of such permits. ECF No. 69 at 2. In fact, there were at least 5 holders of possession permits in 2022, IC Ex. B at 1–4; IC Ex. C at 11, 13, 41, 43, and SCDNR does not explain why only possession permits should count.

9

could— this would matter under § 50-5-380 if SCDNR does not identify the permittee or expose trade secrets.[7]

As to the remaining categories under § 50-5-380, SCDNR makes no attempt to show that the aggregated fishery data at issue contains "income amounts" or "specialized methodologies." Nor could it, as nothing of the sort appears in the challenged materials. *See* ECF No. 67—IC Ex. H.[8]

It is revealing that SCDNR does not engage with any of the distinct categories of data in the challenged document, simply calling it all confidential "permittee information." ECF No. 69 at 5. *Contra Edwards Vacuum*, 2021 WL 186932, at *2 ("[A] party's confidentiality designations must be reasonably and narrowly tailored to protect the confidential information the party seeks to shield from further disclosure."). Among the challenged materials, the crab mortality figures are unintended and *illegal* impacts of this fishery. S.C. Code Ann. § 50-5-1330(C) ("Horseshoe crabs collected in this State must be returned unharmed to state waters"), (G) ("A person who violates this section or a condition of a permit issued hereunder is guilty of a misdemeanor . . . . Each horseshoe crab or part thereof in violation is a separate offense"). However, "illegal . . .

---

[7] SCDNR's focus on the size of the fishery is a backdoor attempt to import the federal Magnuson-Stevens Fishery Conservation and Management Act into state law. Purportedly to implement the federal Act's shield for "any information submitted" by a permittee, 16 U.S.C. § 1881a(b)(1), certain agencies employ an unwritten policy, nowhere authoritatively stated or defined, known as the "rule of three." *See* ECF No. 69-6 at 1. This so-called "rule" generally prohibits the disclosure of aggregated fishery data when there are fewer than three permittees in a fishery; if there are only two permittees, the logic goes, either could subtract their totals from the aggregate to infer the catch of the other. But as explained below, the federal Act does not apply here.

[8] And of course, this commercial crab harvesting data, which is required to be reported under SCDNR permits, *see* ECF No. 42-1 at 1–6, is not "*[n]oncommercial* information provided *voluntarily* to the department in support of a *resource or management activity*." *See* S.C. Code Ann. § 50-5-380(B) (emphasis added).

activity simply cannot qualify for protection as a trade secret." *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mechanical Officials, Inc.*, No. 1:16-cv-00054-EGS-ZMF, 2022 WL 2785985, at *4 (D.D.C. July 15, 2022) (citation and quotations omitted); *accord Goodman v. Genworth Fin. Wealth Mgmt.*, 881 F. Supp. 2d 347, 355 (E.D.N.Y. 2012). As to the harvesting totals, ECF No. 67—IC Ex. H at 2, these data were aggregated across nearly two dozen permittees, *see* IC Ex. C, and were disclosed to the Associated Press by a Charles River executive.[9]

In sum, SCDNR has failed to meet its burden to demonstrate that any of this information is confidential under state law.

### B. No Federal Authority Supports SCDNR's Claimed Confidentiality Designations.

In other support for its claimed confidentiality designations, SCDNR cites the confidentiality provisions of the federal Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1881a(b)(1). However, the federal Act only governs fisheries over three nautical miles offshore, *Ten Taxpayer Citizens Grp. v. Cape Wind Assocs., LLC*, 373 F.3d 183, 189–90 (1st Cir. 2004), and thus, does not apply to the horseshoe crab harvest in South Carolina, which occurs on beaches and in shallow surf.

---

[9] *See* Meg Kinnard, *Clean needles depend on the blue blood of horseshoe crabs*, Associated Press (Aug. 20, 2021), https://apnews.com/article/business-health-coronavirus-pandemic-only-on-ap-crabs-78ef3f0a346a6b712caf08b367fbd6b6, https://perma.cc/2Z6N-6HQE (permanent link) ("[Senior Vice President Foster] Jordan said his harvesters can bring in 100,000 to 150,000 horseshoe crabs").

11

Tellingly, SCDNR **does not claim** that the Magnuson-Stevens Act applies or shields any of the challenged data.[10] The agency's discussion of the federal Act is a red herring.

Even further afield, SCDNR has submitted materials from non-party entities the Atlantic States Marine Fisheries Commission ("ASMFC") and the Atlantic States Coastal Cooperative Statistics Program ("ACCSP) to support its confidentiality designations. Those materials confirm that the "data at issue in the litigation *are not held in or accessed through the ASMFC and ACCSP databases . . . .*" ECF No. 69-6 at 1 (emphasis added). Even if they were, these entities only consider information to be "confidential" where it is "prohibited by law from being disclosed to the public." ECF No. 69-4 at 5. There is no such legal prohibition under the South Carolina law applicable here. The mere preferences and conclusory assertions of non-parties that an entire fishery is "implicitly confidential," ECF No. 69-6 at 1, do not suffice.[11]

In sum, SCDNR has not shouldered its burden to prove the confidentiality of any data in the challenged materials with "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations," *Waterkeeper Alliance*, 278 F.R.D. at 140 (citation and quotations omitted).[12]

---

[10] *See also* ECF No. 69-3 at 5 (Charles River's implicit acknowledgement that the Magnuson-Stevens Act does not apply, noting "had" the Act applied, certain things purportedly "would" follow).

[11] Nor would disclosure of the challenged data reveal, by negative inference, "business information in other states." ECF No. 69-6 at 1. As the ASMFC concedes, there are at least *five* biomedical processors from Maine to Florida. *Id*. Even under the so-called "rule of three" (which does not apply here, *see supra* note 7), the aggregated data under challenge is not confidential.

[12] Even if the agency had met its burden, the remaining factors heavily favor disclosure. *See Waterkeeper Alliance*, 278 F.R.D. at 140 (to support confidentiality designation, movant must show not only that the material is confidential under Rule 26(c), but also

## II.     <u>Disclosure would Cause No Harm.</u>

SCDNR has not "[p]rove[n] that disclosure will result in a clearly defined and very serious injury to . . . business," *Waterkeeper Alliance*, 278 F.R.D. at 140 (citation and quotations omitted)—or, indeed, in any harm at all. *See also In re NDMA*, 512 F. Supp. 3d at 550 ("[T]he harm at issue must be significant, not a mere trifle." (citation and quotations omitted)).

In a letter attached to SCDNR's motion, counsel for Charles River simply recites the definition of "trade secret" and claims without explanation that "[t]here is no question that the requested information derives economic value from not being generally known or readily ascertainable by others," and that disclosure "would readily provide Charles River's competitors a window into the economics of Charles River's horseshoe crab operations in South Carolina, thus indirectly disclosing trade secrets or other specialized methodologies." ECF No. 69-3 at 4–5. However, "a party asserting that discovery will cause competitive injury because of the revelation of trade secrets . . . cannot generally rely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure." *Quotron Sys., Inc. v. Auto Data Processing, Inc.*, 141 F.R.D. 37, 41 (S.D.N.Y. 1992) (citation and quotations omitted); *accord Waterkeeper All.*, 278 F.R.D. at 140 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [Rule] 26(c) test." (citation and quotations omitted)).[13]

---

that "disclosure would cause an identifiable, significant harm" (citation and quotations omitted)).

13

SCDNR claims that disclosing a permittee's "identity" or "best fishing spots" would incentivize permittees "to either fail to report or provide inaccurate reporting to protect their livelihoods." ECF No. 69 at 9. As noted, the challenged materials do not disclose any fisher's spot or identity, and are simply aggregated fishery data that is not confidential under state or federal law. SCDNR provides no explanation for why disclosing the data at issue would cause any permittee to intentionally violate reporting laws, risking permit revocation and other penalties. *See* ECF No. 42-1 at 4 (horseshoe crab possession permit with reporting requirements, stating: "Failure to comply with any of the above conditions can result in revocation of this permit."); *see also* S.C. Code Ann. § 50-5-1330(G).[14]

### III.   There are Significant Litigation-Related Reasons For Disclosure.

On the other side of the balance, there are weighty litigation-related reasons that support removing the challenged confidentiality designations. As explained above, Defendants' blanket designations effectively force Plaintiffs to litigate with one hand behind their back, necessitating lengthy consultation over confidential materials before time-sensitive filings, the preparation of voluminous *in camera* exhibits and/or motion(s) to seal, the removal of specific and relevant discussions of "confidential" materials in public briefs, and the creation of screens around confidential materials at Plaintiff

---

[13] More, Charles River's claim that horseshoe crab harvest totals and pond mortalities are *its* trade secrets is in tension with the company's claim that "independent" contractors perform these activities. *Compare* ECF No. 70 at 3, 11 *and* ECF No. 28-1 at 3, *with* ECF No. 69-3 at 4.

[14] SCDNR further claims, perplexingly, that the (inapplicable) Magnuson-Stevens Act confidentiality provisions are "directly tied to South Carolina's participation" in the ASMFC and ACCSP. ECF No. 69 at 3. SCDNR does not claim that disclosure of the data at issue—which, it bears repeating, "are not held in or accessed through the ASMFC and ACCSP databases," ECF No. 69-6 at 1—would in any way implicate the state's involvement with those organizations.

organizations and for any consultant(s) or expert(s) assisting with this case. These "administrative headaches" of overbroad confidentiality designations are "not harmless" and "result in substantial and unnecessary distractions for the parties and the court." *See In re NDMA*, 512 F. Supp. 3d at 548 n. 1; *see also In re ULLICO Inc.*, 237 F.R.D. at 318.

The challenged materials contain information purportedly covered by § 50-5-380 that is representative of the blanket designations SCDNR has made and will continue to make as it produces responsive documents and its designations become voluminous. Indeed, Charles River has even stated that *it* can withhold permittee information as confidential pursuant to § 50-5-380. *See* ECF No. 67—IC Ex. I at 2 (Charles River's objections to Plaintiffs interrogatories "to the extent that they seek information that . . . is otherwise protected from disclosure under . . . S.C. Code § 50-5-380"). Of course, the statute solely applies to SCDNR's disclosures, not to disclosures by private parties.

Nevertheless, a ruling from the Court on the propriety of SCDNR's designations for the challenged materials will clarify the scope of confidentiality going forward, sparing the Court and the Parties from having to deal with the consequences of overbroad designations by both Defendants. There is simply no basis for SCDNR's claim that "there is no litigation reason supporting the removal of this designation." ECF No. 69 at 4.[15]

---

[15] SCDNR appears to suggest that the fact of this case being a "non-jury matter" means that it may proceed under a cloak of secrecy through trial. *See* ECF No. 69 at 4. But the public right of access is not diminished by the lack of jury involvement. *See, e.g., Pal v. New York Univ.*, No. 06-cv-5892 (PAC)(FM), 2010 WL 2158283, at *1 (S.D.N..Y. May 27, 2010) ("Documents submitted to the Court for its consideration in connection with a bench trial are judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment" (citation and quotations omitted)); *see also Doe v. Public Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) ("We have squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion.").

**IV.     There is Significant Public Interest in the Challenged Materials.**

In determining whether to lift a confidentiality designation, "a court should consider whether the case involves issues important to the public." *In re NDMA*, 512 F. Supp. 3d at 551 (citation and quotations omitted); *accord, e.g.*, *Rech*, 2020 WL 3396723, at *2 (court must balance "the importance of disclosure to the public" (citation and quotations omitted). Where, as here, the party asserting confidentiality is a "public official or public entity," it bolsters the public interest in disclosure. *See Rech*, 2020 WL 3396723, at *2. Where "a private entity and private individuals" are also involved, the fact that "[s]ome of the parties benefitting from the protective order are public entities and public officials" means that "this factor still weighs in favor of disclosure." *Perez v. City of Fresno*, 482 F. Supp. 3d 1037, 1046–47 (E.D. Cal. 2020) (citations omitted).

This is not a typical private dispute between private parties, or a case where a competitor is trying to "gain a business advantage through discovery," *In re Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000, 2017 WL 11681956, at *1 (N.D. Ala. Dec. 5, 2017).

This case involves allegations that Charles River's use and SCDNR's authorization and management of horseshoe crab containment ponds cause the "take" of *rufa* red knots, a threatened species of shorebird listed under the Endangered Species Act. ECF No. 1. In passing the Act, Congress recognized that listed species hold "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," 16 U.S.C. § 1531(a)(3), enacting the Section 9 "take" prohibition as the statutory "cornerstone" to protect these weighty public interests. *Gibbs v. Babbitt*, 214 F.3d 483, 487 (4th Cir. 2000).

Plaintiffs allege that Charles River's use and SCDNR's authorization and management of containment ponds deplete horseshoe crab populations. ECF No. 1 at ¶ 106. As noted, the horseshoe crab fishery is managed by SCDNR as a public trust resource, and the agency's management is a matter of "public concern" under the State Constitution, Art. XII § 1.

Aside from the inherent public interest in a case of this nature, the specific activities challenged here have generated significant public interest and media attention.[16] In particular, media outlets have highlighted the lack of transparency around SCDNR's management of horseshoe crab harvesting, including the lack of public data on harvesting totals and crab mortalities[17]—the same information at issue here. Investigative reports have underscored the lack of transparency around harvesting and financial ties between

---

[16] *See, e.g.*, Shamira McCray, *Conservation groups intend to sue Charles River Labs for holding horseshoe crabs in ponds* (Nov. 23, 2021), The Post & Courier, https://www.postandcourier.com/environment/conservation-groups-intend-to-sue-charles-river-labs-for-holding-horseshoe-crabs-in-ponds/article_6222af26-48a1-11ec-a9f3-77261d32c2f1.html; Chiara Eisner, *South Carolina restricted the horseshoe crab harvest. The lab moved north for more blood* (May 6, 2022), The State, https://www.thestate.com/news/state/south-carolina/article260986517.html; *see also* Chiara Eisner, *As calls rise for horseshoe crab harvest limitations, SC agency may allow more 'pillage'* (May 5, 2022), The State, https://www.thestate.com/news/state/south-carolina/article259836620.html.

[17] *See, e.g.*, Shamira McCray & Tony Bartelme, *SC senator considers legislation to temporarily halt commercial horseshoe crab harvesting* (Apr. 1, 2022), The Post & Courier, https://www.postandcourier.com/environment/sc-senator-considers-legislation-to-temporarily-halt-commercial-horseshoe-crab-harvesting/article_60146d22-b1de-11ec-a2d3-0766882ad02e.html**,** https://perma.cc/NSC7-FBYL (permanent link); Editorial Board, *Time to untangle an unintended conflict along SC's shore* (Mar. 12, 2022), The Post & Courier, https://www.postandcourier.com/opinion/editorials/editorial-time-to-untangle-an-unintended-conflict-along-scs-shore/article_c3058d62-9f28-11ec-9e27-dbedb95087bd.html, https://perma.cc/ M5HQ-YXA4 (permanent link); Chiara Eisner, *Vaccine testing is changing. Why is this $13B lab still bleeding SC horseshoe crabs* (May 5, 2022), The State, https://www.thestate.com/news/local/environment/article248306895.html.

SCDNR and Charles River, which undermine public confidence in state government.[18] These reports fueled the introduction of state legislation intended to lift the "veil of secrecy" around horseshoe crab harvesting.[19] The challenged discovery materials "directly concern[] many central issues in the public debate" and "local policy proposals for reform," weighing in favor of disclosure. *See Perez*, 482 F. Supp. 3d at 1047–48.

## CONCLUSION

For all of the reasons stated herein, Plaintiffs respectfully request that the Court lift SCDNR's confidentiality designation for the document submitted as *in camera* Exhibit H to Plaintiffs' Motion to Compel, ECF No. 67.

[SIGNATURES ON THE FOLLOWING PAGE]

---

[18] *See, e.g.*, McCray & Bartelme, *supra* note 17; Tony Bartelme & Shamira McCray, *SC agency rakes in millions from pharma company it regulates* (Mar. 4, 2022), The Post & Courier, https://www.postandcourier.com/uncovered/sc-agency-rakes-in-millions-from-pharma-company-it-regulates/article_60a80662-82e1-11ec-94d8-2791d3f53dcd.html; *see also* Chiara Eisner, *Of McMaster and Marshes: Inside the $500k proposal to bleed protected SC horseshoe crabs* (May 5, 2022), The State, https://www.thestate.com/news/state/south-carolina/article257214377.html; Shamira McCray & Tony Bartelme, *SC officials may privately allow lab company to harvest horseshoe crabs in off-limits zone* (Mar. 29, 2022), The Post & Courier, https://www.postandcourier.com/environment/sc-officials-may-privately-allow-lab-company-to-harvest-horseshoe-crabs-in-off-limits-zone/article_4b9859b2-aed2-11ec-9bca-97aef1b41cde.html#:~:text=Uncovered%20Update-,SC%20officials%20may%20privately%20allow%20lab%20company%20to,crabs%20in%20off%2Dlimits%20zone&text=Subscribe%20today!,previously%20had%20been%20off%20limits.

[19] *See, e.g.*, McCray & Bartelme, *supra* note 17.

Respectfully submitted,

*s/ Catherine M. Wannamaker*
Catherine M. Wannamaker
(D.S.C. Bar No. 12577)
Carl Brzorad
(D.S.C Bar No. 13648)

Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, South Carolina 29403
(843)  720-5270
cwannamaker@selcsc.org
cbrzorad@selcsc.org

*Attorneys for Plaintiffs*

Charleston, South Carolina
January 3, 2023